## Schenck *versus* Uber & Tees.

1. The engine, machinery and cage constituting an elevator are realty, when put in by the owner as a part of his building.

2. A mechanic's lien may be created for an elevator by the owner or a principal contractor.

3. Levan contracted with the defendant to put an entire elevator into his store; Levan contracted with the plaintiffs to furnish the cage, part of the elevator. *Held*, that the plaintiffs had no mechanics' lien against defendants' building.

4. The Mechanics' Lien Law does not confine the construction of a building to a single contractor, the owner may commit its main divisions to different contractors with power to each in his department to bind the building with a lien.

5. Levan was not a contractor for a primary division of the building having the power of the owner to bind the building; his contract was minor and auxiliary.

6. Duff *v.* Hoffman, 13 P. F. Smith 192; Harlan *v.* Rand, 3 Casey 511; Singerly *v.* Doerr, 12 P. F. Smith 9, distinguished.

February 3d 1876. Before AGNEW, C J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Philadelphia:* Of January Term 1874, No. 265.

This was a scire facias, issued June 15th 1872, by Peter H. Uber and Milton Tees, trading as Uber & Tees, against Joseph H. Schenck, owner, &c., and W. B. Levan and George H. Ball, contractors, on a mechanics' lien, entered March 14th 1872.

The claim was for $450, against a building and lot, on the northeast corner of Sixth and Arch streets, in the city of Philadelphia, "being a debt contracted for mill-work, viz.: cage for elevator, furnished at the request of the said W. Barnet Levan and George

[Schenck *v.* Uber & Tees.]

H. Ball, by the said Uber & Tees, continuously, within six months last past, for and towards the erection and construction of, and on the credit of the said building, at the times and in the quantities in the annexed bill of particulars mentioned, to wit: from the 18th day of September A. D. 1871, to the 19th day of September A. D. 1871, which bill said complainants pray may be taken and considered as part of this lien against said building of which the said Joseph H. Schenck then was and now is the owner, or reputed owner, and W. Barnet Levan and George H. Ball, contractors for the erection of said building, with whom the said contract was made; and the said Uber & Tees claim to have a lien on said building and curtilage appurtenant thereto, for the amount of the said claim.          *          *          *

"Philadelphia, September 19th 1871.
Messrs. W. Barnet Levan & Co.,
          To Uber & Tees,          Dr.
To cage for elevator for J. H. Schenck's building, north-
    east corner of Sixth and Arch streets, as per contract, $450.00"

On the 5th of June 1871, W. B. Levan & Co. entered into a contract with the defendant, Joseph H. Schenck, for a "passenger and goods elevator," in the building against which the lien was entered.    One of the specifications for the passenger elevator was a car to seat four persons, to be finished as set out in the specification; the whole cost of this elevator to be $2800; the goods elevator was to cost $1700; two-thirds of the purchase-money to be paid as the work progressed, and the remainder at its completion. The car or "cage" was furnished by the plaintiffs upon the order of Levan & Co.

The case was tried March 12th 1873, before Peirce, J.

Tees, one of the plaintiffs, testified that the cage was furnished by them on a contract with Levan & Co., and charged to them on plaintiffs' books.    Under objection and exception, witness testified that they furnished it on the credit of the defendant's building, and had made it according to the specifications, except in a few particulars, which were dispensed with.    Plaintiffs had not been paid for the cage.

For the defendant, Levan testified that the car was delivered by the plaintiffs on the order and account of Levan & Co., and not on the credit of defendant's building; plaintiffs were sub-contractors to Levan & Co. for that part of the machine.    The elevator was not a success.    Defendant had paid $3500 on account of the contract.    The plaintiffs rendered their bill for the car to Levan & Co., and sued them for it.    The car, by the contract of Levan & Co. with the plaintiffs, was to be delivered at the building; it was part of the material furnished under the contract of Levan & Co. with defendant.    The car was not a failure.

[Schenck *v.* Uber & Tees.]

The defendant offered to prove that the elevator was not put up according to defendant's contract with Levan & Co., and that it was dangerous and unfit for use; that defendant was obliged to have it altered at a cost of $1600; it being admitted that the defect was not in consequence of the car being improperly made.

The court rejected the offer, and sealed a bill of exceptions.

The following are points of plaintiffs, with their answers:—

1. Barnet Levan & Co. were such contractors, with Dr. Schenck the owner, for the erection of such part or portion of the building at the northeast corner of Sixth and Arch streets, viz.: for the passenger and goods elevators and machinery; that a person supplying them with materials for the construction of said elevators and machinery, can have a lien, as material-men, against said premises.

2. Uber & Tees, the plaintiffs, having furnished the wooden cage for such elevator upon the credit of said building, and upon the order and direction of Barnet Levan & Co., the contractors with Dr. Schenck, are entitled to a lien against said premises.

These points were affirmed without qualification.

3. The wooden cage furnished by said plaintiffs to said building, and now being held and claimed as his own by the said Dr. Schenck, and used by him in his said building at the corner of Sixth and Arch streets, the plaintiffs are entitled to recover in this action.

Answer: "That is so, if you believe that the work was furnished there upon the credit of the building, but not otherwise."

4. The verdict of the jury should be for the plaintiffs.

Answer: "It is a question for the jury on the evidence, and as instructed in the law."

6. The plaintiffs can show by parol, that materials were furnished to the credit of the building, even if the building is not mentioned on the book of charges.

This point was affirmed without qualification.

The defendant's point, which was refused, was:—

If W. Barnet Levan & Co. contracted with J. H. Schenck to construct the elevator complete, furnishing the work and materials necessary for that purpose, including the cage, the plaintiffs, who made the cage for W. Barnet Levan & Co., are not entitled to maintain this action against J. H. Schenck, owner of the building in which the elevator was put up.

The verdict was for the plaintiffs for $489.90.

The defendant took a writ of error, and assigned for error:—

1. Rejecting his offer of evidence.

2–6. The answers to plaintiffs' points.

7. The answer to defendant's point.

*W. S. Price*, for plaintiff in error.—A contractor for the erec-

31 P. F. SMITH—3

tion of an elevator is not entitled to a lien against the building: Kitson *v.* Crump, 1 Weekly Notes 164. A sub-contractor has no authority to charge a building for materials or work : Harlan *v.* Rand, 3 Casey 511; Duff *v.* Hoffman, 13 P. F. Smith 191; Singerly *v.* Doerr, 12 Id. 9.

*B. P. Wilson* (with whom was *J. S. Price*), for defendants in error.—By the contract with Levan & Co., the defendant made them contractors to erect part of the building, and therefore had authority to bind the building for materials furnished: Duff *v.* Hoffman, 13 P. F. Smith 192; Derrickson *v.* Nagle, 2 Phila. 120; Young *v.* Elliott, Id. 352; Singerly *v.* Doerr, 12 P. F. Smith 9. This elevator was part of the building, and therefore the subject of a lien. Its method of construction makes it part of the realty, and it would be waste to remove it: Wademan *v.* Thorp, 5 Watts 116; Summerville *v.* Wann, 1 Wright 186; Singerly *v.* Doerr, *supra;* Morgan *v.* Arthurs, 3 Watts 141; Gray *v.* Holdship, 17 S. & R. 413; Witmer's Appeal, 9 Wright 462; Heaton *v.* Findley, 2 Jones 304; Harlan *v.* Harlan, 3 Harris 513; Hoskin *v.* Woodward, 9 Wright 44; Oves *v.* Ogelsby, 7 Watts 106; Pyle *v.* Pennock, 2 W. & S. 390; Voorhis *v.* Freeman, 2 Id. 119. It was competent to show by parol that the cage was furnished on the credit of the building: Presb. Church *v.* Allison, 10 Barr 414; Kelly *v.* Brown, 8 Harris 447; Church *v.* Davis, 9 Watts 304; Wolf *v.* Batchelder, 6 P. F. Smith 87; Singerly *v.* Doerr, *supra.*

Chief Justice AGNEW delivered the opinion of the court, February 14th 1876.

The precise question in this case must be distinguished from others seemingly akin to it. It is not whether the engine, machinery and cage constituting a hoisting machine or elevator are realty. Certainly they are when put in by the owner as a part of his building. Such machines have become essential to the convenient use of large stores, factories, hotels and the like; and constituting a part of the construction of the building, pass with it. The question is not whether a lien may be created by the owner, or a principal contractor for the erection of the building. Undoubtedly, as for any other part of the construction of a building necessary for its use, according to its kind, a lien may be created for it by the owner or a principal contractor. The true question before us is, whether the contract under which the lien is attempted to be fastened upon the building is such a contract as confers on the contractor the power of the owner to bind the building by a lien for the work and materials furnished. Were Levan & Co. such contractors here? It is thought they were, and Singerly *v.* Doerr, 12 P. F. Smith 9, and Duff *v.* Hoffman, 13 Id. 192, are relied on as authorities. But they are not authority for the posi-

tion, unless we overlook what was said in the cases themselves, and the true intent of the Mechanics' Lien law. To do so would be to confound all contracts relating to useful fixtures, or minor parts of the building with a contract for the erection and construction of the building itself. In the case of Harlan v. Rand, 3 Casey 511, following the letter of the Act of the 16th June 1836, it was said that the 12th section of the act distributes the parties to the work into three classes, according to their several functions, viz. : the owner, the contractor, called also the architect and builder, and the workmen and material-men. The law establishes one link and one only (says the opinion) between the owner on the one hand, and the workmen and material-men on the other. It requires the lien to be founded on contract, and it recognises no one as having power to contract, so as to make a lien against the building, except the owner and the contractor or architect. It is evident the writer of that opinion had in view the simple letter of the statute, and therefore a single contractor for the whole building. But when the case of Singerly v. Doerr arose, we saw that too close an adherence to the letter would frustrate the purpose of the act. Many changes in business had taken place after the passage of the act, and many new subjects were added to those for which a lien was given. Besides, the law having originated in the necessities of Philadelphia, but having been finally extended over the whole Commonwealth, it was seen that the customs of this city were not always the same as in other places, especially in the country. In many instances the owner himself performed the functions of the architect or builder, and made contracts with different persons for the leading divisions of his building. That with one he would contract for the cellar and rough masonry, with another for the brick or frame work, and a third for the wood work, these all being leading parts in the constitution of the whole. Now, the main intent of the law being to secure the workmen and material-men whose labor and material enter into the construction of the building, and constitute its chief value, it was seen that to confine the power to bind the building to a single contractor, would emasculate the statute, whenever two or more persons were separate contractors for the principal parts of the building. In fact it would put it into the power of the owner always to defeat the main purpose of the statute, by simply dividing the construction of the building into separate contracts. Hence it was decided that the law does not confine the erection and construction of the building to a single contractor, but the owner may commit the main or leading divisions of the building to different contractors with power to each in his department to bind the building with a lien. The same question again arose in Duff v. Hoffman, 13 P. F. Smith 192, where the reasons were given more at large, and the limits of the power to bind the building under contract more distinctly defined. It was

[Schenck *v.* Uber & Tees.]

said, "such contractor, however, must be one within the contemplation of the statute, to wit: a person employed to *erect* or *construct* the building. It is the contract for erection which communicates the owner's power, and places the contractor alongside of the architect or builder. But there is a palpable distinction between a contract to erect and a contract to furnish toward the erection, whether it be work or material. One who contracts to put up a building, or one of its leading divisions, as its brick work or its wood work, is not a mere workman or a mere material-man. He is employed to erect and construct, not merely to work. Hence, we held in that case, that a lumber dealer employed merely to furnish lumber is not a contractor for the erection of the building or any division of it. He is a material-man merely, and not having a contract to erect, cannot bind the building for lumber furnished to him by another. Now this is the very point in this case. Levan & Co. were not contractors for any leading division in the erection of the building, but were merely machinists employed to put into the building two hoisting machines for goods and passengers. They employed Uber & Tees to make the movable cage or car.

Now, unless Levan & Co. were contractors for the erection of a primary division of the building, they did not, according to the principles in Singerly *v.* Doerr, and Duff *v.* Hoffman, possess the power of the owner to bind his building. That they were not such contractors is very clear. Their contract was simply minor and auxiliary. They did not even contract to construct that part of the building called the well, in which elevators move up and down. They contracted to put into the building the engines, drums, cages and their necessary attachments, guides and steam pipes. Now it is evident this was not a contract for the erection or construction of any primary or main division of the building, but one merely for certain useful, or it may be necessary machinery, for the convenient use of the building. Granting that when put in, it became part of the realty and as a necessary fixture it would pass with the building, yet being put in by one not employed in the erection of any main division of the building, his contract was not such as communicated to him the power of the owner to bind the building with a lien for work and materials. Had the contractor for the wood work of the house been authorized, as a part of his contract, to put in these machines, we would perceive that being engaged in the actual erection and construction of one of the primary divisions of the building, and these being a part of his contract for construction, he had the owner's authority to fix liens upon the building for this part of the work. But if we extend the doctrine of lien to every one employed in furnishing toward the building things which are convenient, useful or even necessary for the enjoyment of the property, but which do not con-

[Schenck v. Uber & Tees.]

stitute a part of the contract for the erection and construction of any primary division in the building, we abandon the very idea of Singerly v. Doerr, and Duff v. Hoffman, which simply extended the power of the owner to the contractors of leading parts of the building in order to reach the true intent of the Act of 1836. In avoiding Scylla, we founder in Charybdis. To hold that a minor contractor, who undertakes to put in fixtures or conveniences, may bind the building for the work and materials furnished to him by others, would expose the owner to untold claims, and sink his building in costs. The multiplication of liens by such means would become an evil so great, legislation would have to remove it. But so long as we hold that the power of the owner can be communicated only to a principal contractor for the whole, or for some major and essential division in the erection of the building itself, we reach the spirit of the law, and protect those engaged in the process of erection under him, and at the same time save the owner from an indefinite multiplication of liens. This limit is clear and reasonable, and in the language of the opinion in Harlan v. Rand, "it leaves to the owner a reasonable control in relation to the liens with which the house may be encumbered, and prevents their indefinite multiplication by others who are under no contract relation with him, for, I may add, a contract that is not for the construction of a leading division in the work of erection, is no contract within the meaning of the Act of 1836." To cite Singerly v. Doerr, and Duff v. Hoffman, for any other doctrine, is contrary to the express words of the opinion before quoted. In a general sense all fixtures and useful conveniences that pass with the building are a part of it, but contracts to construct and put them in are not necessarily such contracts for erection and construction as the Act of 1836 contemplates. It may be said, however, that there will be cases where it is difficult to determine whether the contract is one for erection and construction of a leading or primary division of the building. This may occur, but the only consequence is that the fact must be decided by the jury on the testimony of those who are familiar and skilled in the business of building, under the guidance of the court as to the true principles applicable to the case. This is not novel, such inquiries being of frequent occurrence, especially in relation to alterations and additions to old buildings, before the act, giving a lien for repairs and alterations.

In the present case it is clear that the contract for the engines, drums, cages and attachments of these hoisting machines, is not a contract for any leading or primary division of the building in the process of its erection, but is one for fixtures merely, useful, convenient and necessary, in the use of the building. Levan & Co., therefore, had no power to bind the building with a lien for the cages put in by the plaintiffs below.

Judgment reversed.